The second case of the morning, Marshall v. Blake. Good morning. May it please the court, my name is Lauren Tobiasen and I represent the appellant, Marilyn O. Marshall, Chapter 13 trustee. The decision on direct appeal here today is part of a series of cases in which the bankruptcy court addressed the issue whether federal income tax refunds and federal income tax credits are disposable income pursuant to Section 1325B of the Bankruptcy Code. In each case, the bankruptcy court ultimately determined that the tax refunds and the tax credits are disposable income. The bankruptcy court then went on to find that debtors could project that income and any associated expenses that it will be used on in the future into the calculation of their current monthly income, even though that income and those expenses are not actually received during the six months prior to the filing of the bankruptcy case. This projection occurs by prorating those amounts onto the debtor's Schedules I and J. In this case, the bankruptcy court confirmed the debtor's Chapter 13 plan over the trustee's objection to these prorated amounts without holding an evidentiary hearing. The decision of the bankruptcy court should be reversed and the confirmation order vacated for three reasons. First, the decision misapplies the Hamilton v. Lanning decision and the calculation of current monthly income for below median level debtors. Second, this projection conflicts with the requirements that a debtor has the burden to demonstrate a plan is feasible and filed in good faith pursuant to Section 1325A.6 of the Code and Sections 1325A.3 and A.7. Finally, it was clear error for this court to deny the trustee an evidentiary hearing because the prorated income and expenses were disputed by the trustee and the only evidence presented was contradicting statements filed under oath by the debtor. As to my first point regarding the misapplication of the Hamilton v. Lanning decision, in that case, the court cautioned against using the mechanical approach for debtors when the results were not consistent with what their income would be going forward. This mechanical approach was applied in this case to project income on the debtor's schedule I&J taking their prior year's tax credit income and dividing it by 12. In this case, those amounts are just simply too speculative to be projected. The Lanning case involved an above median debtor and the difference here is that this is a below median debtor. The key difference between the above median debtor and the below median debtor is the way expenses are calculated under the Bankruptcy Code. For the below median debtor, they are supposed to be taken from their actual monthly expenses as listed on Schedule J. For the above median debtor, there are standardized deductions that are set forth in Section 707B2. So in Lanning, when they took the income out of the current monthly income equation, there was no impact on expenses because they are already set forth by the standardized amounts in the code. In this case, in order to project the income, they also had to project the expenses. When those expenses are projected, there's supposed to be substantial evidence that those expenses will occur during the term of the plan. What's the issue that's certified? The issue that was certified by the Bankruptcy Court was whether income tax credits are disposable income under the Bankruptcy Code. Now that's resolved, isn't it? Correct, it's resolved in that the appellee has no longer disputing it in their brief. So what's going on here? Well, the entire confirmation order was certified for review by this court, by the Bankruptcy Court, and in order to get to the decision to allow the proration of these amounts, they had to first decide that the income was income under the Bankruptcy Code. So our position is that these other issues are directly related to that finding, and if that finding was certified, then the entire confirmation order should be certified as well. When these amounts are projected onto the schedules, it conflicts with the debtor's burden to demonstrate that a plan is feasible and filed in good faith under Section 1325A of the Code, which is a separate section of the Code in which the debtor is required to demonstrate that the plan is feasible and filed in good faith. The burden on that section of the Code is a preponderance of the evidence, and in this case there was no evidence presented that the debtor had a historical practice of spending her tax refunds on the expenses that were ultimately listed on her Schedule J. The reason that the debtor argues that she should be able to project her federal income tax refunds onto her Schedules is that she had a historical practice of receiving them, but there was no similar historical practice of the expenses that were listed on her Schedules. And when assessing plan feasibility, there needs to be reliable facts that can show that the debtors can make their plan payments. As to my last point, that it was clear air for the court to deny the trustee an evidentiary hearing on the prorated income and the expenses, this court found in Inree Brooks that a blow-meat-and-debtor must prove on a case-by-case basis that a claimed expense is reasonably necessary. When expenses are prorated onto Schedule J, they're not able to prove that information because they don't actually exist at the time the case is filed. They're simply predicting that those are the expenses that they will have in the future. Well, 1325B2 does speak about amounts reasonably necessary, and it doesn't have actual, as that word is found in other sections. Correct. It does not have the word actual in it. However, the coding case law addressing how disposable income for a blow-meat-and-debtor has always referred to their actual income and expenses on Schedule J. But you agree the actual is not in the language of 1325B2? That is correct. The word actual is not in the language of that section of the code. Because it's interesting that it's found in other sections. I mean, the absence of actual just seems to me to allow for a little more play in the joints. However, in order to prove that an expense is reasonable and necessary, the natural inference would be that it has to actually exist, that the debtor has to be something that they actually incur on a regular basis. Well, this is pretty reasonably predictable, right? Well, in being predicted, they would not actually be able to prove that they have that expense, meet their evidentiary burdens under the code. They'd have to have something that would actually show that the expense exists, not that it's just reasonable and necessary. What's the reason it comes directly up here? Why did it not go through the normal process of going to the district court, instead of appeal to district court? The bankruptcy court certified the appeal under Section 158D2, and they found that they certified one aspect of the confirmation order, so they would certify the entire order, and that particular aspect that they certified was whether tax credit or income. I guess it's the same thing I asked before, then, basically. Correct. You say because it certified a piece that the whole thing should come up here, as opposed to going to the district court, where normally that's where it would go. Correct. And the rule itself does say judgment, order, or decree, and then it says involves a question of law. And so the inference is that if it's involving that question, all the other issues that it involves as well would come up. And there was a slightly unique circumstance as to what happened in this case when the certification order was entered. It was entered originally past the 30 days that the rule provides for the bankruptcy court to have jurisdiction, but then it was remanded back by the district court for the bankruptcy court to enter the certification order. Now, the bankruptcy courts in this district have been following, as best I can determine the practice of bankruptcy, Judge Thorne in this case. Correct. They have been following it in that they've been allowing debtors to prorate the income and expenses on their schedules. They have not been requiring it. Is this the first time? There are still cases that are getting confirmed that debtors use the tax turnover language and they do not do the proration. So this is the first time there's been an appellate challenge by a trustee to the practice? Correct. This is the first time there's been an appellate challenge, and this was the first case that Judge Thorne actually wrote the opinion on to address this issue. There was another opinion that was written by another bankruptcy judge, Judge Carol Doyle, and that was the Morales decision that is heavily relied on in this opinion. I did just also want to touch briefly on the appellee's argument that the trustee did not make a request for an evidentiary hearing in the case. The request was made in writing in the trustee's written objection. It was not styled in the typical title of an objection to confirmation in this case, and the reason that that was is because there was an oral objection made, and then the court asked the appellee to write a memorandum in support of their plan, and then we responded to the memorandum. So it was titled a response to the memorandum, but it was a written objection, and in the written objection we did make a request for an evidentiary hearing on the disputed amounts of the prorated income and the prorated expenses. If there's no further questions from the court, I will conclude with the request that this decision be reversed and that the confirmation order be vacated. Thank you. Mr. Brady. Good morning. May it please the court, my name is Jim Brady, and I represent the debtor in this matter. First, this case is about particular expenses which the bankruptcy court found to be reasonable. It is not about whether the earned income tax credit is income, which as you pointed out, Your Honor, that was the only issue certified by the bankruptcy court for direct appeal. As such, the bankruptcy court's decision is not an issue that justifies a direct appeal, and furthermore, there are no reasons to reverse confirmation of the debtor's plan where the bankruptcy court's findings regarding the debtor's expenses are not clearly erroneous. First, we ask that the court reconsider its decision to grant the direct appeal. Secondly, the trustee waived her right to an evidentiary hearing regarding the debtor's expenses. Third, the court's findings below regarding the debtor's income and expenses have not been shown to be clearly erroneous. And finally, the bankruptcy court correctly found that the debtor acted in good faith and that her plan was feasible. Regarding the court's jurisdiction, as you pointed out, Your Honor, the only issue certified by the bankruptcy court was whether or not the earned income tax credit was income for purposes of the debtor's plan. That is no longer before this court. We used that amount from the beginning, and her initial pleadings, her schedules I and J, the tax credit is included as income, and we took expenses from it. And that issue was resolved by the bankruptcy court, and we are not contesting it now. Secondly, the rules governing direct appeals were not followed. There was no petition filed by the trustee under Appellate Procedure Rule 5, and the exception that this court applied in any returner does not apply in this matter. In that case, a similar situation occurred. The trustee appealed. The issue was certified by the bankruptcy court, but no official petition under Rule 5 was followed, but the court felt that there was kind of no harm no foul because the debtor there had never contested direct appeal below. Also, the court found that there was what it considered an important issue for the court to determine, which was namely how debtors were taking certain mortgage expenses when their homes were underwater, and with what the court called an impending foreclosure crisis, they decided that they needed to hear that appeal. Here, those exceptions don't apply. First of all, Ms. Blake, at all points, that she was given the opportunity to oppose direct certification of the issues to this court. And second, while this issue may be important to Ms. Blake, it's not overall an issue that this court needs to issue an opinion on because the issue certified by the court about the income is not properly before the court. This court does not need to issue a ruling about whether or not the earned income tax credit is income. Was that, in effect, an advisory opinion? Yes, I think that would be an advisory opinion if the court were to issue that because it wouldn't have any bearing in this matter between these two parties, between the debtor and the trustee. The trustee waived its opportunity for hearing. The request that it made was in the context of the briefing regarding whether or not the tax credit was income. And if you look at the request in the paragraph that they make it, the things that they are complaining about is whether or not the tax credit was going to be definite and certain enough for the Hamilton discretion to apply. There's nothing about expenses in that request. And that is really their main complaint here is her expenses. The income tax credit is virtually certain as any other type of income. You can go on the IRS's web page. You can do a search for EITC, am I eligible? You can look up the tables, and it's all there. If your household is qualified and you make a certain income below an amount, you're eligible. Ms. Blake has been eligible this whole time. In fact, she was eligible when she, in the four years prior, in the tax returns that had to be submitted to the trustee as part of the bankruptcy process, we were able to establish historically that she received that earned income tax credit. You know, I know this is sort of a sidestep, but as far as that earned income tax credit, I originally thought this was supposed to offset Social Security taxes, that someone had to pay that tax. They don't owe income taxes. They didn't make enough money. So this is somebody's idea that this will give them, you've got to apply for it and everything, but it had something to do with the Social Security taxes withheld. You get some of that back. Right, and it also, if you look at historically, it's been used to keep low-wage earners in the workforce and to really bring people out of poverty, and the studies do show that that has been successful. They're making minimum wage or something. Right, and right now the cutoff, I looked at it this morning, the cutoff is, depending on your household, it's basically between $39,000 and around $50,000 a year, and then it moves depending on the eligible. Is that high now? Okay. Pardon me? That's higher than it used to be. It's higher than it used to be, and it's a lot higher than Ms. Blake's income. Ms. Blake's income on her schedules, her gross income, including the tax credit, I believe, is right around $2,100 or $2,200 a month, and out of that she's making her planned payments for 60 months. Additionally, when the trustee made that request, they did not renew that request at any point after they made it in that written brief. There was no request when the Bankruptcy Court issued its ruling on that issue that was briefed on whether or not the tax credit was income. They could have renewed that request, and they probably should have renewed that request at that time, and they failed to do so. Again, at confirmation, when the issues of expenses were discussed before the court, the trustee, again, did not make a request. They did not file a written objection to confirmation at that point. They did not, when the court asked, I think the quote in the record is, I assume the trustee is objecting, and the trustee simply says yes. At no time did the trustee say, hey, wait, if you're going to rule in favor of the debtor, we want a chance to talk to her. Even if they had made that request, they had the chance to question her at the 341 meeting, where she was sworn in under oath, and again, our initial schedules had both the EITC as income and the prorated expenses. They could have asked her about all of those things at the 341 meeting, and they failed to do so, because the 341 meeting was adjourned as the debtor having complied with all the requirements that the trustee wanted from her. Well, as I understand, she's continuing to work. That's part of the deal, right? There's Chapter 13. Yes, in fact, one thing in this case is that Ms. Blake is on payroll control, and what that means is that the creditors get paid before anybody. So she does not even see the planned payment on a monthly basis. When her employer pays her, they deduct a monthly amount from her paycheck that goes directly to the trustee, and the debtor is current on her payments. Is that sort of like a garnishment? Is that defective in any way? Kind of, I guess you could call it that. I mean, we offer that in cases where we think there might be a problem with making payments. So in this case, and I'll leap forward to the good faith argument, is that Ms. Blake had to overcome a presumption of bad faith earlier in the case when she filed her motion to extend the stay because this bankruptcy was the second case of hers within the preceding 12 months. And as such, she had to file a motion to extend the stay beyond 30 days from filing in order so her creditors couldn't come after her for any pre-petition debts. And as part of that process, we filed that motion. There's an affidavit from her attesting to some changed circumstances as to why this case would be successful as opposed to the old case, and offered to go on payroll control because that's kind of an insurance policy that the payments will actually be made to the creditors. The trustee had an opportunity to object, did not do so. Creditors also had the opportunity to object, and none did so. And so when the court finds that the stay is going to be extended, there is an implicit finding there of good faith. Is there a secure creditor in this? There is not a secure creditor. What there is is what we would call a priority unsecured creditor, which is Ms. Blake's subsidized landlord. So she receives a rent subsidy. A what? A rent subsidy. So her rent is determined on her income, and the subsidy pays for a large portion of her rent, which if she were to lose that subsidy, the whole bankruptcy would fall apart, and nobody would get paid. So the courts have found that it's proper for us to create this other class of creditor that will get 100% paid, despite what will happen to other unsecured creditors. Regarding the expenses, there is no requirement that actual expenses are used, and in fact it would be impossible for someone to use actual expenses. The dynamic that the trustee proposes would require debtors to almost come in on a monthly basis with receipts and show what they were going to spend their money on, and that's not what the code requires. What the code requires for below-median debtors is that those expenses simply be reasonably necessary. And as the Bankruptcy Court pointed out, those expenses don't even have to be monthly. They can be over the life of the plan, like here, Ms. Blake's graduation expenses for her two twin sons, or for car repairs, both recognized by the Bankruptcy Court here as reasonable in this case. Where'd she get her car repaired for $30? Well, it's over the life of the plan. So over a year, we know that she's had car repairs in the past, and we're projecting that she's going to have car repairs in the future. I'm just kidding, basically. I mean, obviously, this is a hand-to-mouth situation. Yeah, these budgets are tight, and the Court recognized that in her ruling and in other cases, that below-median debtors who file 13s, that the budgets are tight, and they're frequently making decisions as to who is going to get paid within their budget. Other things that happen with those expenses is that heating, for example. If we file a case in January or February, we don't put as a gas expense $400 a month. What we do is we look at what happens over the life of a year and say, let's look at your yearly gas expense. You spend $400 a month when it's cold, and you spend $60 a month when it's warm, and we average that, because that's the whole concept of using the term projected in the code. There's usually the utility once the FAT payment in the winter. Right, and historically, the Earned Income Tax Credit is used to meet household expenses. There are studies that say that, too, and that's what we are trying to do here is that we want to be able to take that tax credit where we are certain that it's going to occur and then prorate that over the life of the plan and deduct the expenses from it. The Court's findings on whether or not those expenses were reasonable is reviewed under a clearly erroneous standard, and the trustee has not shown any evidence in the record to suggest that the Court erred here. Regarding the feasibility of the plan, cases say that that is decided on a case-by-case basis and that the Bankruptcy Court's decision is entitled to deference on review. Here, Judge Thorne made a finding that she thought the plan was feasible, that the debtor had these reasonable expenses, that her kids would get new furniture and new beds, so I think the quote is that they're not sleeping on the floor, and that her subsidized landlord would get paid so the household would have a place to live, and that the creditors would get something. That something is what unsecured creditors are entitled to get in a Chapter 13. They are entitled to receive the best efforts of the debtor. Here, Ms. Blake is going the maximum amount in her plan, and as the Bankruptcy Court held, those creditors will get something at the end of the day if this case proceeds. What is that amount? She will be paying... As far as the overnightly... The total amount that will be paid into the plan is just shy of $6,000. She's paying... It moved a little bit because there were multiple amendments of the plan, but right now she is paying $102 a month. Thank you, Your Honors, and we ask that the decision below be affirmed. All right. Thank you, Mr. Brady. I just have a few points on rebuttal. First, as to issue of jurisdiction, Appellee pointed out that this issue that was certified has no further relevance in this court because no matter what you decided, it would have no impact on that case. That is actually incorrect, and that was actually pointed out in Judge Thorne's certification order that if you did decide that it was not income, then this proration would not need to incur. That income would not even be included in the bankruptcy at all. So I wanted to point that out because it is still relevant, and it is related to the issues that are being addressed today and that are before the court. The second issue was that there was no formal petition to accept that was filed in this court. The Turner case does say that the transmittal of the documents from the bankruptcy court to this court can serve as the functional equivalent of that petition if they contain sufficient information for this court to determine what happened below. In this case, that did occur, and in fact this court entered an order accepting that, and the actual words of the order said, the petition is accepted. And that order was actually entered three days before the deadline for the appellee to file an objection, in this case, to that acceptance of the petition. So if they had any issues and they wanted to re-raise the objections to the certification below again, they could have filed an objection and still have filed it timely within the requirements of Rule 5B of the appellate court. The next point is that the appellee indicated that we had waived our right to an evidentiary hearing. There is no requirement in the bankruptcy rules or in the bankruptcy code that an objection has to be brought over and over again every time there is a hearing on the same case and the same debtors Chapter 13. In fact, the court itself referred back to its original ruling at the final hearing on confirmation, and it was understood that when the trustee is referring to her objection in the plan, being confirmed over the trustee's objection, that the court is confirming it over all objections that have been raised, whether written or oral objections. It's not just the single objection that was raised that day in court. So again, our position is that the evidentiary hearing request was not waived. As to my next point, appellee indicated that the trustee could have questioned the debtor at the 341 hearing regarding the expenses and that they also could have objected to the motion to extend the automatic stay in this case. However, the amendments to the schedule that occurred in this case occurred after both of those events. So by the time her plan was confirmed, Ms. Blake had amended her schedule I three times and her schedule J four times, each time those schedules were amended, they were signed under the penalty of perjury, and each time they changed the amount of the income and the amount of the expenses from what was originally on there. So the trustee did not have the opportunity to examine her regarding those changed expenses or the changed income. It was not the same documents that were before the trustee when the 341 meeting of treasurers occurred and when the motion to extend the automatic stay occurred as well. The other thing that appellee raised was that the credits were going to stay the same over the term of the case. One of the issues that we raised, and we did not have the opportunity to question Ms. Blake about, was whether her dependent children would age out of eligibility for those credits. That was actually cited to in our brief, and it was also cited to in our written objection that it seemed to be the amounts, some of the amounts were listed were too high based on what her previous amounts received were, and that also she didn't state whether her children were full-time students, how long they were expected to remain as students, because the ages appeared that they would age out of those credits during the term of the plan. The other thing is that tax credit income is not received and spent monthly, but is received as a lump sum, and it's usually spent as a lump sum. And so when these amounts are projected and prorated out of the schedules, it is not giving the court a clear picture of what the debtor's actual budget is and whether they will be able to make those payments to the plan throughout the case. And finally, I did want to point out that this case was only a 2% dividend to unsecured creditors, and the plan payment was only $102. So every dollar that was changed on all of these schedules and all of these amounts could count towards a higher dividend, even as much as 5% or 3% or 4%, because the plan payment was so low and the dividend was so low that even though these are low amounts and there is a tight budget, every dollar counts here. Thank you. Thank you. Thanks to all counsel. Case is taken under advisement.